1

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA,          :
                                   :
  v.                               :
                                   :  CASE NUMBER 4:14-CR-141
EAN HUGGINS-McLEAN,                :
                                   :
    Defendant.                     :

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE G. R. SMITH
United States Courthouse
125 Bull Street
Savannah, Georgia
August 19, 2014

TRANSCRIBED BY: Victoria L. Root, CCR
                United States Court Reporter
                Post Office Box 10552
                Savannah, Georgia  31412

*(PROCEEDINGS TRANSCRIBED FROM ELECTRONIC RECORDING)*

2

1           A P P E A R A N C E S
2
3       FOR THE GOVERNMENT:
4           JOSEPH D. NEWMAN, Esquire
            Assistant United States Attorney
5           Post Office Box 8970
            Savannah, Georgia  31412
6           (912) 201-2511
7
8       FOR THE DEFENDANT:
9           THOMAS A. WITHERS, Esquire
            Gillen, Withers & Lake, LLC
10          8 East Liberty Street
            Savannah, Georgia 31401
11          (912) 447-8400
12
13
14
15
16
17
18
19
20
21
22
23
24
25

3

1  P R O C E E D I N G S

2  (Call to order at 9:00 a.m.)

3  COURT CLERK: The Court calls *United States v. Ean*

4  *Huggins-McClain*, Case Number 4:14-CR-141.

5  MR. NEWMAN: Good morning, Your Honor. The

6  Government is ready.

7  MR. WITHERS: And Defense is ready, Your Honor. Good

8  morning.

9  THE COURT: Well, there's a motion to suppress, and

10  the Court scheduled a hearing on that. There's a *Brady* motion

11  where there's no requested evidentiary hearing.

12  The motion asserts that the defendant made statements

13  after his arrest that were involuntary. And, ordinarily, a

14  defendant who makes such a claim has a constitutional and

15  statutory right to have the voluntariness of his statements

16  determined prior to their admission at trial.

17  But I've read the motion carefully now in preparation

18  for the hearing, and it is the defendant's obligation to do

19  more than just assert that his statements were involuntary. He

20  must allege facts that, if proven to be true, indicate that his

21  confession was involuntary. I don't think the defendant has

22  met the pleading standard that the law requires.

23  The motion begins by saying that every factual

24  assertion in the motion is supported by a reference to the

25  attached exhibits, which are discovery material furnished by

1  the Government in this case, reports of interview.  And that's
2  admissible under our rules.
3       You don't have to always give an affidavit if there
4  is material in the record.  The Government doesn't contest its
5  own case agent reports.  If they are tendered and they create
6  an issue and meet the pleading standard, then that's
7  sufficient.  But the motion really doesn't adhere to the
8  assertion that all the facts alleged in the motion are
9  supported.
10      I've read the discovery attached, the FBI 302
11 reports, but the motion begins by, on Page 2, he "was met by
12 several FBI agents who told him they needed to question him."
13 Well, that is really not found in the discovery material.  That
14 implies and suggests that he was given the idea that there was
15 no choice but to be questioned.
16      The motion says in the next sentence that the
17 defendant "was escorted to an interrogation room at the
18 airport."  That's not found in the discovery material.
19      Page 4, "he was whisked off to a small interrogation
20 room where he was questioned by multiple agents," that's not
21 found in these 302s.
22      All the 302s say is -- the one at the end,
23 Exhibit C -- that there were some agents who located and
24 arrested him without incident at the airport and then
25 transported him to the Chatham County Detention Center.

The other 302 simply says he was interviewed at the airport, advised of the identity of the agents, signed a waiver agreeing to speak with the agents.

Nothing about these 302s creates an issue as to the voluntariness of his statements. There's no affidavit from the defendant and no facts before the Court that qualify and meet the standard set out by the Supreme Court in *Connelly*, which said that coercive police activity is a necessary predicate to a finding that a confession is not voluntary.

So even if the defendant's motion is embellished by the nonrecord facts that it asserts, it doesn't lend itself to a finding that the police engaged in coercion. Rather, the essence of the motion is found on its final page, that the traumatic event of being arrested by a team of agents at the airport necessarily means that no statement could be knowing or voluntary. There's no law to that effect that I'm aware of.

It's not simply the fact of a -- if that were the case, as the Government argues -- if that were the case, then no post-arrest statement could ever be deemed to be voluntary. Certainly, someone arrested and placed under arrest is going to be upset about it. Certainly, a person is not going to be happy about it. And their blood pressure is going to go up, and they might be nervous. But it takes more than those internal pressures. That's never enough, the Supreme Court teaches us.

1    Coercion is an absolute prerequisite of -- it is the
2  sole concern, the Supreme Court says, of the Fifth Amendment
3  due process clause and -- in finding a statement involuntary.
4  And we don't have any allegation of government coercion here.
5    I don't see any need for an evidentiary hearing.  If
6  you want to say something about it, I'll listen to you, but
7  my -- I've just held an evidentiary hearing in another case
8  very recently, within the past -- certainly within the past
9  month, which was -- I regretted holding because it was just a
10 complete waste of time.
11    And I made a statement in that report and
12 recommendation that the Court should not have held the hearing
13 because the showing of coercion -- the factual basis that would
14 establish coercion had not been met.
15    So I'm not inclined to go forward with a hearing on
16 this record.
17    MR. WITHERS:  Well, Your Honor, I would say two
18 things.  Number one, the -- for the purpose of demonstrating
19 the ability to use the statement of the defendant at trial, I
20 think the Government has the burden of going forward to show
21 that the statement was obtained consistent with the --
22    THE COURT:  Ultimately, it is the Government's
23 burden where the issue is properly raised, and the burden is
24 preponderance of the evidence.  That's true.
25    MR. WITHERS:  That's number one.

1  And, number two, the factual issues that the Court
2  has alerted to, for want of a better term, I think are of no
3  consequence, you know, whether the defendant was met in the
4  airport and then taken to an interrogation room. The reports
5  are what they are in that respect. I think the defendant has
6  to particularize his motion for the purpose of raising the
7  issue.
8  He was obviously interrogated. That cannot be
9  disputed. Whether that interrogation took place in a small
10 room at the airport or in a side room at the airport I think is
11 of no consequence with respect to the issue of whether a
12 hearing could -- should be heard or not -- or should be held or
13 not. I believe --
14 THE COURT: No. I was just picking at the assertion
15 in the -- I agree with that. But the motion to suppress begins
16 on Page 1, every factual assertion in this motion is supported
17 by the attached exhibits, and it's just not true.
18 Maybe you could call this language -- they needed to
19 question him and escorted him, whisked him away -- as just
20 color that is okay for Counsel to put in the motion, but there
21 are citations to the record in support. That color is not
22 supported by these affidavits. So every factual assertion is
23 not supported here.
24 But be that as it may -- that's a minor point -- the
25 major point is and the critical point is no assertion of

coercive police activity is made on this record. And the law is that if you don't make those types of assertions, then you don't get a hearing. And we have addressed this in a recent case.

Here's the direct quotation from the 11th Circuit. The defendant is not entitled to this remedy of a hearing unless he can show that his version of the events, if true, would require the conclusion that his confession was involuntary. That is, he must allege facts which would, if proven true, indicate the involuntariness of his confession.

The more recent case from the 11th Circuit is 2006, no hearing where voluntariness facts not alleged. I can tell you -- I mean, there's just case after case from the 11th Circuit, as well as from other circuits, that if you don't set out facts that show that the police coerced you into making a statement, then you don't get a hearing.

You can't just throw involuntariness up into the air and expect the Court to have to conduct a hearing. And there's a misperception, I think, out there that that's enough, all I have to do is say, "My statement was involuntary," and you get a hearing. That's not the law.

MR. WITHERS: Well, I don't think that that is what we have done in this case. I'm aware of the fact that a motion has to be particularized, and that's the reason why I attached the 302 and the other affidavits.

1   THE COURT:  Particularized as to what, though?
2   The essence of involuntariness is police coercion.
3   *Colorado v. Connelly* said absent police coercion and police
4   overreaching, you can't have an involuntariness finding.  They
5   ruled out the possibility that some type of internal mental
6   pressures, even psychotic mental pressures, were enough to make
7   something a violation, police just listening to someone who is
8   compelled by God, in his mind, to make a statement.
9   They rejected the notion that it has to be -- a
10  statement has to be the product of free will.  Instead, they
11  said the statement must be free of coercion.
12  Where is any coercion alleged on this record?  In
13  your motion or in the facts?
14  The exhibits that support the motion just don't lend
15  themselves to an argument that the police -- that these agents
16  did anything.  They didn't -- it doesn't say they physically
17  beat him, they threatened him with physical force, that they
18  tricked him, that they browbeat him, that they used loud
19  voices, that they kept him in interrogation for hour after
20  hour, that they suggested that if he didn't cooperate with them
21  that he would have a harsher outcome in the case or would be
22  convicted and face a longer term in prison.
23  None of the things that would ordinarily -- in the
24  typical fact scenarios that lead to involuntariness findings
25  are asserted here.

10

1      What's the point of holding a hearing?
2          MR. WITHERS:  I think we've sufficiently raised the
3  issue, Your Honor, and I think the burden rests with the
4  Government, and --
5          THE COURT:  There's a pleading burden that initially
6  rests with the defendant.  I'm not talking about -- if that
7  pleading burden were met, I would agree, once we start taking
8  evidence, that the burden of proof rests with the Government.
9  But whether we take evidence or not is the issue here, not
10 whether the Government has the ultimate burden of proof should
11 we have to hold the hearing.
12         Mr. Newman, I don't want to act rashly and deprive
13 the Government of calling its witnesses and laying out a case,
14 but I don't see the point of it.
15         MR. NEWMAN:  Your Honor, it would appear that
16 Mr. Withers' failure was in being too honest in his
17 allegations, which were just maybe a slightly stronger
18 recasting of Task Force Officer Harley's recitation of what had
19 happened.  And the Government ultimately does agree that there
20 was no improper coercive tactic used and that Mr. Huggins- --
21         THE COURT:  Or alleged.  That's the important point.
22 Not used; alleged.
23         MR. NEWMAN:  Yes, Your Honor.  And if the Court feels
24 comfortable proceeding in this fashion, then the Government,
25 you know, certainly doesn't challenge that.  We have Task Force

1  Officer Harley here, the primary interrogator, questioner,
2  interviewer of Mr. Huggins-McLean, and the Court would readily
3  see, in not any extensive testimony, that the statements that
4  Mr. Huggins-McLean made were voluntary and not the product of
5  any overreaching by law enforcement.
6        THE COURT: Well, I've set aside my time this morning
7  for this. I -- certainly, I have other things that I could be
8  doing, but I have cleared my calendar for a hearing, fully
9  expected to hold one.
10       But as I started reading the motion, it's just like
11 the last motion that I received in a recent case where the
12 necessary assertions of involun- -- of coercion that led to an
13 involuntary statement are not made here, just like they weren't
14 made in the last case. And the Court is not inclined to
15 proceed with taking of evidence in the face of this, so I won't
16 hold a hearing.
17       What's the *Brady* motion issue?
18       MR. NEWMAN: Your Honor, I believe that -- I think
19 it's -- there's no issue for the Court there. I think -- at
20 this time, I think I -- the Government has satisfied
21 Mr. Withers' *Brady* request.
22       If the case proceeds to trial, then the Government
23 has additional disclosures to make with regard to Mr. Redmond.
24 At this point, that -- those issues are not yet ripe for the
25 Government to even satisfy the other request, so the Government

1  hasn't given them -- the Government acknowledges that we do
2  have additional *Brady* obligations, but it might not be
3  necessary to make (unintelligible).
4      MR. WITHERS:  And that is the reason I raised that
5  point, Your Honor, is because I see that the Court's practice
6  is to moot *Brady* motions.  I don't think they're ever mooted.
7      THE COURT:  The Government has a continuing
8  obligation --
9      MR. WITHERS:  Right.
10     THE COURT:  -- to make those disclosures, and I think
11 Joe's saying he will do it.
12     MR. WITHERS:  I understand that.  Exactly.
13     THE COURT:  The only other thing I want to address is
14 something I've started doing in all cases.  And I did not do it
15 when this case first began, but I want to get this on the
16 record here this morning.
17     The Court has, over the years, been utilizing a
18 form -- and the deputy clerks for the district judges have been
19 handing it out, I'm told, in the courtroom -- that advises
20 the -- all the defense counsel of their obligations under
21 Supreme Court precedent *Roe v. Flores-Ortega* to consult with
22 the client about an appeal, which is a duty that exists in the
23 overwhelming majority of the cases.
24     The Court's form requires that consultation to
25 occur perhaps even where there is no such duty.  We have a

1    court-imposed obligation to sit down with any defendant who is
2    convicted and faces sentencing in a case; to talk to the
3    defendant about the appellate rights that he or she has; to
4    get the -- confirm what the -- explain the advantages and
5    disadvantages of pursuing an appeal; and to confirm in writing,
6    with both counsel's signature and the defendant's signature,
7    the client's desires regarding an appeal.
8                That form is now being served electronically.  I
9    don't think it was when this case began.  But it is now being
10   served electronically upon all counsel in the case whether they
11   are retained or appointed.
12               I know you're familiar with the form, Tom.  I just
13   want to say on the record the Court requires the usage of that
14   form.  And I'm telling -- I'm not picking on you, but I'm
15   telling everyone.  Court-appointed counsel, I've instructed
16   them not to submit a voucher for payment of their services if
17   they don't use the form.  Don't even bother to apply for --
18   give me a CJA voucher or one to the district judge.
19               For retained counsel, if it happens that an
20   attorney -- first of all, they're violating a court order if
21   they don't file it.  And, second, if the Court has to hold a
22   2255 hearing down the road and we find that that hearing was --
23   would have been unnecessary had this form been utilized, then
24   I'm going to tag the offending attorney -- retained attorney
25   with the cost of the 2255 proceeding, which we estimate is in

the neighborhood of $10,000 or more on each occasion that we -- I've had to do this.

And, further, in no case where that form has been utilized by an attorney has the Court had to hold an evidentiary hearing on the issue of ineffectiveness regarding failure to file an appeal. So it is an important form. I don't know how to give it any greater emphasis.

I'm doing this -- I did this en masse in a recent proceeding upstairs where we had 54 defendants, and so it's become part of my standard practice in these cases.

MR. NEWMAN: Your Honor, I have a question about that, which might be unusual coming from the Government, but is it premature for counsel to confer with a client and address the issues in that form and execute it prior to sentencing, or can it be done prior to sentencing?

THE COURT: You know, the Supreme Court in *Roe v. Flores* talks about the adequacy of the consultation. I can envision cases where that might be the case, where presentencing -- if the case goes to sentencing, that presentencing consultation might meet the 11th Circuit standard.

But I think our form is designed to be used post-sentencing, that you sit down with the client after sentencing, after the defendant knows the sentence that he's been -- he's received from the Court, and then and there get

1  that --
2           MR. NEWMAN:  Your Honor, I received an executed form
3  such as the Court is speaking of from counsel in a Waycross
4  case.  The defendant has not even actually -- their clock has
5  not even begun to run because the man was sent off for an
6  evaluation.
7           But I will so advise defense counsel that his filing
8  of that form --
9           THE COURT:  You mean you got the form signed where
10 the person waived the right to an appeal before the case has
11 even led to a conviction?
12          MR. NEWMAN:  Before the first discovery motion has
13 even been filed.
14          THE COURT:  Well, I think that's a little bit jumping
15 the gun, but, you know, I'm not telling you what to say to that
16 attorney.  I'm glad that's in Waycross and not up here.
17          All right.  Anything else?
18          MR. WITHERS:  No, Your Honor.
19          THE MARSHAL:  All rise.
20               (Proceedings concluded at 9:26 a.m.)
21
22
23
24
25

16

1        C E R T I F I C A T E

2

3        I, Victoria L. Root, Certified Court Reporter, in and for
4   the United States District Court for the Southern District of
5   Georgia, do hereby certify that, pursuant to Section 753,
6   Title 28, United States Code, the foregoing is a true, correct,
7   and complete transcript of the stenographically reported
8   proceedings held in the above-entitled matter and that the
9   transcript page format is in conformance with the regulations
10  of the Judicial Conference of the United States.
11       WITNESS MY HAND AND SEAL this 21st day of August, 2014.
12
13
14
15
16
17
18                                  */s/ Victoria L. Root*
                                    VICTORIA L. ROOT, CCR B-1691
19                                  United States Court Reporter
                                    Southern District of Georgia
20                                  Savannah Division
21
22
23  Post Office Box 10552
    Savannah, Georgia   31412
24  (912) 650-4066
25